**The Todd Law Group, PLLC**
Jeffrey Todd (Bar Id. 041752002)
12929 Gulf Freeway Suite 301
Houston, Texas 77034
(832) 243-4953
Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAEJIN CHOI, YELIN BAE, PIOTR TORBAN, IRINA KLYATIS, OLGA KRAVETS, GERALD ADAMS, CHRISTINA LEYVA, and DOUG REUTHER, and derivatively on Behalf of ONE PARK CONDOMINIUM ASSOCIATION, INC.<br><br>          Plaintiffs,<br><br>      v.<br><br>DMG PARK LLC, DMG INVESTMENTS, LLC, DMG PROPERTY MANAGEMENT LLC, YUANLIU HE, MC GOWAN BUILDERS, INC., ARCHITECTURA, INC., REUTHER + BOWEN, CHIESA, SHAHINIAN, AND GIANTOMASI, WEI ZHU, HUIJIE LYU, ZACHARY WANG, P.C. RICHARDS & SON BUILDER'S DIVISION, D&B SERVICE GROUP, ARCHITECTURAL WINDOW MANUFACTURING COMPANY | <u>**Civil Action**</u><br><br>**COMPLAINT AND JURY DEMAND** |

1

Plaintiffs Daejin "Patrick" Choi ("Mr. Choi"), Yelin Bae ("Ms. Bae"), Piotr Torban ("Mr. Torban"), Irina Klyatis ("Ms. Klyatis"), Gerald Adams ("Mr. Adams"), Olga Kravets ("Ms. Kravets"), Christina Leyva ("Ms. Leyva"), and Doug Reuther ("Mr. Reuther"), (collectively the foregoing individuals are referred to as the "Plaintiffs"), by and through their undersigned attorneys, The Todd Law Group, allege individually and derivatively on behalf of One Park Condominium Association, Inc. against Defendants DMG Park LLC ("DMG Park"),DMG Investments LLC ("DMG Investments"), DMG Property Management LLC ("DMG Property Management"), McGowan Builders, Inc., ("McGowan Builders"), Architectura, Inc. ("Architectura"), Yuanliu "Jacky" He ("Mr. He"), Wei Zhu ("Mr. Zhu"), P.C. Richards & Son Builder's Division ("P.C. Richards"), Chiesa Shahinian & Giantomasi PC ("Chiesa, Shahinian, and Giantomasi"), Zachary Wang ("Mr. Wang"), Huijie Lyu ("Ms. Lyu"), D&B Service Group , Architectural Window Manufacturing Company and John Does 1-100 (collectively with John Does 1-100 are referred to as "Defendants"), as follows:

## SUMMARY OF THE ACTION

1.      Plaintiffs are owners of residential units in a condominium located at 320 Adolphus Avenue, Cliffside Park, NJ 07010, designated as One Park Condominium ("One Park" or the "Condominium"). One Park was marketed as, and warranted to be, a paragon of luxury and security with a number of amenities and automated parking garage system.

Defendants DMG Investments, DMG Park, DMG Property Management, McGowan Builders, Architectura, P.C. Richards, Mr. He, and others ensnared Plaintiffs and other victims in a fraudulent interstate scheme to sell Plaintiffs residential real estate that Defendants knew contained material defects, thereby coercing Plaintiffs to purchase residential units. In January 2024, Plaintiffs learned that Defendants knew the building had serious issues, including insufficient parking, severe water

infiltration, defective balconies, defective flooring, defective electrical systems, damage to the building's foundation, a non-functioning pool, sauna, and dry spa, common elements that did not match the descriptions in the marketing materials, non-functional HVAC systems, and malfunctioning plumbing systems that were incapable of delivering consistent hot water to Plaintiffs' units. Plaintiffs also learned that Defendants knowingly participated in a scheme to sell Plaintiffs refurbished appliances as new.

Defendants conspired to develop marketing materials and a Public Offering Statement that omitted the existence of defects known to them in order to ensnare Plaintiffs and others into a scheme to purchase residential units. In January 2024, Plaintiffs learned that while Defendants were developing the marketing materials and Public Offering Statement, they knew the building had insufficient parking, a non-functioning pool, sauna, and dry spa, defective windows, an automated parking garage with limitations on the size and type of vehicles that could be used, severe water infiltration, defective balconies, damage to the building's foundation, non-functional HVAC systems, and malfunctioning plumbing systems that were incapable of delivering consistent hot water to Plaintiffs' units. Plaintiffs also learned that the appliances delivered to them were refurbished.

Defendants DMG Investments, DMG Property Management, DMG Park, and Chiesa, Shahinian, and Giantomasi, and others participated in a second scheme to defraud Plaintiffs and other unit owners by sending Plaintiffs and other victims invoices for HOA fees via interstate carrier and electronic communications that Plaintiffs believed would be used for the benefit of the Homeowner's Association. Defendant DMG Investments created a fictitious entity DMG Property Management that was tasked with hiring staff for the Homeowners Association and managing the day-to-day operations of the Condominium. Plaintiffs and other victims were unaware that they were making payments to a bank account controlled by DMG Investments rather than the Homeowner's

3

Association.  Defendant DMG Investments in turn used the funds from Plaintiffs and others to pay for their own expenses.

To maintain control of the Homeowner's Association, Defendant DMG Investments and Chiesa, Shahinian, and Giantomasi participated in a scheme to conduct sham elections, withhold financial records from Plaintiffs, obtain fraudulent insurance policies (with DMG Property Management and DMG Park as named insureds) to cover legal expenses even though neither entity had a single employee and to thwart Plaintiff's and other's attempts to uncover the scheme.

2.      Thus, Plaintiffs assert claims for (1) Breach of Contract; (2) Negligence; (3) Legal Malpractice; (4) Fraudulent Misrepresentation; (5) Violation of the Interstate Land Sales Act ("ILSA"); (6) Violation of the NY General Business Law; (7) Violation of the Racketeer Influenced and Corrupt Organizations Act, ("RICO Statute), 18 U.S.C. §1962(c); (8) Breach of Fiduciary Duty; (9) Wire Fraud; (10) Mail Fraud; (11) Violation of the Fair Debt Collection Act; (12) shareholder derivative action for Misappropriation of Funds;  (13) shareholder derivative action for Breach of Contract (14) Violation of the Planned Real Estate Full Disclosure Act; and (15) Breach of Implied Warranties of Intended Use, Habitability and Workmanship

3.      Plaintiffs seek damages and equitable relief including, but not limited to, treble damages, monetary damages, compensatory damages, consequential damages, restitution, injunctive relief, punitive damages, costs and expenses (including attorneys' and expert fees), interest, and any additional relief that this Court determines to be necessary or appropriate to provide complete relief to Plaintiffs.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, because Plaintiff's claims arise under the RICO Statute, Interstate Land Sales Act,

and the Fair Debt Collection Practices Act.

## THE PARTIES

5.      Plaintiffs Mr. Choi and Ms. Bae own Unit Number 508 in One Park.

6.      Plaintiff Mr. Adams owns Unit Number 512 in One Park.

7.      Plaintiff Mr. Torban and Ms. Klyatis own Unit Number 505 in One Park.

8.      Plaintiff Ms. Kravets owns Penthouse 14 in One Park.

9.      Plaintiff Ms. Leyva owns Unit Number 1014 in One Park.

10.     Plaintiff Mr. Reuther owns Unit Number 1114 in One Park.

11.     Upon information and belief, Defendant DMG Park, LLC is a limited liability company with a principal place of business in New York and is the sponsor/developer of One Park. DMG Investments is the sole member of DMG Park LLC

12.     Upon information and belief, Defendant DMG Investments, LLC is a limited liability company with a principal place of business located at 100 Wall Street, Suite No. 2203, New York, New York 10005 and is DMG Park's sole member. DMG Investments marketed itself as the project developer of One Park.

13.     Upon information and belief, Defendant DMG Property Management, LLC is a limited liability company with a principal place of business located at 100 Wall Street, New York, New York 10005 and is the management company designated to operate and manage One Park.

14.     Upon information and belief, Defendant McGowan Builders, Inc. is a Florida corporation with a principal place of business located at 160 East Union Avenue, East Rutherford, New Jersey 07073 and was the general contractor and construction manager for the construction of One Park.

15.     Upon information and belief, Defendant Architectura, Inc. is the consulting

architectural firm that designed the One Park building, with a principal place of business located at One Executive Drive, Suite LL100, Fort Lee, New Jersey 07024.

16.    Upon information and belief Chiesa, Shahinian, Giantomosi is the law firm that prepared the second Public Offering Statement at the Condominium, served as counsel for One Park Condominium Association overseeing the transition of the Board and other elections for One Park Condominium Association with a principal place of business at 105 Eisenhower Parkway, Roseland, New Jersey 07068.

17.    Upon information and belief Zachary Wang is a property manager at the Condominium with a principal place of business at 320 Adolphus Avenue, Cliffside, Park New Jersey 07010.

18.    Upon information and belief Huijie Lyu is a property manager at the Condominium with a principal place of business at 405 Lexington Avenue, New York, New York 10174.

19.    Upon information and belief, Defendant Yuanliu "Jacky" He is the Chief Executive Officer of DMG Investments, the sole member of DMG Park and DMG Property Management.

20.    Upon information and belief, Defendant Wei Zhu is a contested board member of One Park Condominium Association and resides at 320 Adolphus Avenue, Cliffside Park, New Jersey 07010.

21.    Mr. Zhu is referred to as the "Board Member Defendant."

22.    Upon information and belief D&B Service Group participated in the commissioning of the HVAC system at the condominium with a principal place of business located at 444 John F. Kennedy Drive North, Bloomfield, New Jersey 07003.

23.    Upon information and belief Architectural Window Manufacturing company provided the windows at the condominium with a principal place of business located at 359 Veterans Blvd,

Rutherford, NJ 07070.

24.    Upon information and belief, at all relevant times, John Does 1-100 are persons and/or business entities presently unknown, who assisted the Defendants in the scheme to defraud Plaintiffs and other victims and assisted in planning, construction, marketing, sale, and/or management of the condominium in which Plaintiff's own units.

## COMMON FACTUAL ALLEGATIONS

## A.    THE SCHEME

25.    Defendants DMG Investments, DMG Park, DMG Property Management, and others including but not limited to McGowan Builders, Architectura, P.C. Richards and Sons, and Chiesa, Shahinian, and Giantomasi, and Yuanliu He, knowingly and intentionally conspire, combine, and agree to commit certain offenses against Plaintiffs and other victims, that is:

    a.    To devise a scheme and artifice to defraud and to obtain money and property from Plaintiffs and other victims by means of materially false and fraudulent pretenses, representations, and promises that affected a financial institution; and for the purpose of executing such scheme and artifice, each Defendant or their coconspirators did knowingly place or cause to be placed in a post office and authorized depository for mail matter a thing to be sent and delivered by the U.S. Postal Service or any private or commercial interstate carrier, in violation of Title 18, United States Code, Section 1341; and

    b.    To devise and intend to devise a scheme and artifice to defraud and to obtain money and property from Plaintiffs and other victims by means of materially false and fraudulent pretenses, representations, and promises, that affected a financial institution; and for the purpose of executing such a scheme and artifice, each Defendant or their co-conspirators did knowingly transmit and cause to be transmitted by means of wire communication in interstate

and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

c.      The objects of the conspiracy, of which Defendants DMG Investments, DMG Park, McGowan Builders, and Architectura, and later Chiesa, Shahinian, and Giantomasi were members, which began in 2018 and is ongoing to present day, were for the co-conspirators to defraud Plaintiffs and other victims into purchasing condominiums at One Park Condominium by: (1) providing Plaintiff's and other victims with Public Offering Statements and marketing materials that contained material  misrepresentations and omissions regarding the property; (2) knowingly and intentionally transferring used products via interstate carrier to One Park, and selling them to Plaintiffs and other victims as new; and (3) fraudulently providing false information to financial institutions to coerce them into to providing loans to Plaintiffs and other victims - all  in order to make tens of millions of dollars via the sale of falsely advertised luxury condominiums at One Park Condominium.

26.     This initial scheme was fueled by a multistate advertising campaign in which all of the co-conspirators advertised the development of One Park in regional periodicals, online websites, and in person events while announcing the "One of a kind project"

**(Intentionally Left Blank)**



*Figure 1 Some of the Defendants with others*



*Figure 2 Ribbon Cutting Ceremony*

# DMG INVESTMENTS INVITES PUBLIC TO GRAND OPENING CELEBRATION THIS WEEKEND AT ONE PARK CONDOS IN CLIFFSIDE PARK



*Figure 3One Park Brochure Page*

27.    Defendant DMG Investments and DMG Park in collaboration with Defendants, Architectura, McGowan, Chiesa, Shahinian and Giantomasi, and others produced marketing materials and public offering statements that contained false and misleading information about One Park.

28.    The public offering statement and marketing, advertising, and promotional materials produced by DMG Investments and DMG Park in collaboration with, McGowan,  Architectura, Chiesa, Shahinian, and Giantomasi, and others  state that the property provides "the opportunity to live in one of the few luxury residential developments along the Palisades Cliff," "beautifully designed condominium units," "High Performance Energy Efficient zone controlled Daikin systems" (See Exhibit A).

29.    The public offering statement and marketing, advertising, and promotional materials produced by DMG Investments, DMG Park, in collaboration with McGowan, Architectura, Chiesa, Shahinian, and Giantomasi, and others, state that "One Park presents a rare opportunity to own a residence that provides the best of modern design and conveniences." The materials also state that "each home offers generous floor plans that create truly livable residences for today and for the future."

30.    The public offering statement and marketing, advertising, and promotional materials produced by DMG Investments, DMG Park, in collaboration with McGowan, Architectura, Chiesa, Shahinian, and Giantomasi, and others, state that the property includes "dynamic balconies" that "highlight the design concepts as a fluid connection to the site and its unique setting."

31.    The public offering statement and marketing, advertising, and promotional materials produced by DMG Investments, DMG Park, in collaboration with McGowan, Architectura, Chiesa, Shahinian, and Giantomasi, and others, assure residents of "Five-star Living" with a wide range of building services such as a "24- hour attended front desk, live-in resident manager, porter and handyman services, intercom system full coverage wi-fi, package storage and bike storage."

11

32.    The public offering statement and marketing materials produced by DMG Investments, DMG Park, in collaboration with McGowan, Architectura, Chiesa, Shahinian, and Giantomasi, and others, state  that One Park's resident-only amenities would encompass "25,000 sq feet of programmed space for residents" that would have a "state of the art fitness center, sauna and steam rooms, squash court, golf-simulator room, 55' long heated, indoor/outdoor, pool with outdoor sundeck, outdoor dining area, children's play room, resident lounge, pet spa, outdoor movie area, and a furnished roof deck." The marketing materials (Exhibit A) and public offering statement (Exhibit B) also state that the property contained 46 outdoor parking spaces, 37 for the exclusive use of unit owners and 9 for the use of unit owners and their guests.

33.    The public offering statement and marketing materials produced by DMG Investments, DMG Park, in collaboration with McGowan, Architectura, Chiesa, Shahinian, and Giantomasi, and others, state that the building would have "[o]n site automated parking by Unitronics." The materials also state that "Unitronics provides the most high tech, secure, and efficient automated car storage solution available." The materials state that the parking garage would have a "covered drop off area and fully protected parking structure" that would allow vehicles to "remain safe from theft, vandalism and parking damage." The materials state that the parking garage would contain 326 parking spaces.

34.    The public offering statement and marketing materials produced by DMG Investments, DMG Park, in collaboration with McGowan, Architectura, Chiesa, Shahinian, and Giantomasi, and others, also state that the automated parking system offered unit owners efficient, fast, and reliable automated valet service.

35.    The public offering statement and marketing materials produced by DMG Investments, DMG Park, in collaboration with McGowan, Architectura, Chiesa, Shahinian, and

Giantomasi, and others, provide that the building would include an "air filtration system throughout, a backup generator to supply power for emergency services, a condensing boiler for instant access to heat and hot water, and electric car charging stations."

36.     The public offering statement and marketing materials produced by DMG Investments, DMG Park, in collaboration with McGowan, Architectura, Chiesa, Shahinian, and Giantomasi, and others, provide that the residences would include "[h]igh performance energy efficient Daikin HVAC system with zoned controls." The materials also state that the residences would have "[m]ulti-zone climate control" that allows "for bespoke heating and cooling from room to room with Daikin VRV air system heating with heat recovery."

37.     The public offering statement and marketing materials produced by DMG Investments, DMG Park, in collaboration with McGowan, Architectura, Chiesa, Shahinian, and Giantomasi, and others, provide that the residences would be "pre-wired for smart homes" and that each residence would have "enhanced wiring infrastructure" with "exceptional access to cutting-edge communications and entertainment technology with custom upgrade options."

38.     Defendants DMG Investments, DMG Park, Chiesa, Shahinian, and Giantomasi, and others provided Plaintiffs with the above marketing and promotional materials. Plaintiffs relied upon the marketing, advertising and promotional materials, public offering statements, and floor plans as an important source of information in their decision to purchase their respective units in the property as described below.

39.     Other methods and means by which Defendant DMG Investments and others used to perpetuate the Scheme included the following:

a.     Defendants DMG Investments and DMG Park LLC enlisted real estate agents to advertise the property and provide the appearance of a luxury condominium.

13

b.      Defendants and their co-conspirators provided Plaintiffs and others temporary certificates of occupancy to signify that the building was safe for habitation.

c.      It was part of the scheme that Defendant or their co-conspirators provided Plaintiffs and lending institutions with appraisal reports stating that the Developer was not in control of the Association and provided false and misleading information regarding the occupancy of the building. Agents of DMG Investments provided this information to third party appraisers and lending institutions. (See Exhibit D). On or around December 26, 2018, a representative of DMG Park and DMG Investments, Aurin, told Mr. Adams via text message that One Park had sold "just under 30%" of the units (which would equate to approximately 60 units); On or around September 17,  2018, a representative of DMG Park and DMG Investments' sales office told Mr. Giraldo and Ms. Rodriguez's mortgage appraiser that 44 of One Park's units were under contract as of September 2018, that the developer and builder were not in control of the Homeowners' Association (i.e. HOA) as of September, 2018, and no single entity (e.g. same individual, investor group, corporation) owned more than 10% of the total units in the project as of September 2018 (See Exhibit D); On or around October 2019, DMG Park and DMG Investments' sales office told Mr. Choi's appraiser that 60 of One Park's units were closed as of October 25, 2019.

40.      Based on the representations in the marketing, advertising, promotional materials, the Public Offering Statement (the "Offering Statement"), and in brochures and press releases that One Park would be a full service and secure building with all of the amenities, services, and features promised, Plaintiffs each agreed to purchase various units within One Park for a price certain:

a.      Mr. Adams agreed to purchase unit 512 on or around February 20, 2019;

b.      Mr. Choi and Ms. Bae agreed to purchase unit 508 on or around November 27,

2019;

c.      Mr. Torban and Ms. Klyatis agreed to purchase unit 505 on or around January 4, 2019;

d.      Ms. Kravets agreed to purchase Penthouse 14 on or around December 12, 2019;

e.      Ms. Leyva agreed to purchase unit 1014 on or around November 16, 2018; and

f.      Mr. Reuther agreed to purchase unit 1114 on or around April 8, 2019.

## B.      **THE TRUTH**

41.      In January 2024, Plaintiffs learned that Defendants DMG Investments, DMG Park, McGowan Builders, Architectura, Chiesa, Shahinian and Giantomasi and others knew that the representations made to Plaintiffs and other victims was false.

42.      Plaintiffs learned that Defendants DMG Investments, DMG Park, McGowan Builders, Architectura, Chiesa, Shahinian, and Giantomasi, and others knew that there were limitations with the automated garage that would limit the type, size, and model of vehicle that would fit in the garage.

43.      In January 2024 Plaintiffs learned that Defendants DMG Investments, DMG Park, McGowan, Architectura, Chiesa, Shahinian, and Giantomasi and others knew that the automated garage had limitations that were not disclosed to Plaintiffs and other victims. In an email from Defendant Architectura to Defendant DMG Investments and DMG Park, Conrad Roncati from Architectura states that "It was made clear to DMG Investments that low ground clearance vehicles" would not fit in the garage. (See Exhibit C).

44.      Defendants DMG Investments, DMG Park, McGowan Builders, Architectura, Chiesa, Shahinian, Giantomasi, and others also misrepresented the availability of parking on the surface parking lot.  The Public Offering statement and marketing materials developed by Defendants and others advertised 46 surface parking spaces available for use. The surface parking lot only contained 37 spaces.  The false and misleading statements about parking has resulted in a parking lot that is

consistently in violation of local building regulations due to the inability of emergency vehicles to access the parking lot because vehicles are double and triple parked.



*Figure 4 One Park Condominium Parking Area with Overcrowding due to Lack of Parking*



*Figure 5Figure 2 One Park Condominium Parking Area with Overcrowding due to Lack of Parking*

45.    Defendants DMG Park, DMG Investments, McGowan, Architectura, Chiesa, Shahinian, and Giantomasi and others were also aware that Plaintiff's units would have HVAC systems that were damaged due to faulty installation.

46.    Defendant DMG Park promised an HVAC system that was "high performance," "zone controlled," and that would provide "[m]ulti-zone climate control" that would allow for "bespoke heating and cooling from room to room with Daikin VRV air system heating with heat recovery."

47.    Upon information and belief, Defendants poorly designed the HVAC system and did not utilize appropriate design and construction methods in installing the HVAC system. Consequently, the  system is not effective at producing heat on extremely cold days or cold air on extremely hot days. In January 2024, Plaintiffs learned that the D&B Service Group who was responsible for installing the HVAC systems within their units and in common areas along with

17

McGowan proceeded with installation of HVAC systems knowing that conditions would cause the HVAC systems to malfunction and cause damage to the HVAC equipment. (See Exhibit E).

48.    Plaintiffs learned that Defendants also were aware of issues with the balconies at One Park Condominium.  Prior to purchase of their units Defendants were aware that balconies were experiencing spalling and other defects.



*Figure 6 Cracked Balcony*

49.    In January 2024, Plaintiffs learned that Defendants, DMG Investments, DMG Park, McGowan Builders, P.C. Richards and Sons, Architectura, and others devised a scheme to purchase refurbished appliances, transport these appliances via interstate carrier (Exhibit G) knowingly and

intentionally with the purpose of selling these appliances to Plaintiffs and other victims as new. (Exhibit F).

50.    Defendants DMG Park, DMG Investments, McGowan, Architectural Window Manufacturing Co, Architectura, and others knew that the windows installed in the building were defective.

51.    Defendants DMG Park, DMG Investments, McGowan Builders, Architectura and others also knew that the building would not have functional trash chutes as advertised.  The lack of functional trash compactors has left the trash rooms filled with garbage and trash while attracting rodents:



*Figure 7 Trash Chute Overflow*

19

52.     Defendants DMG Park, DMG Investments, Architectura, McGowan, and others were also aware that the Plaintiffs' units and others were not sealed properly allowing for water infiltration into the interior of Plaintiffs' units, and water ponding due to the inadequate slope of the balconies. A report was issued to Defendants DMG Park, DMG Investments, McGowan, and Architectura with recommendations for remediation, however upon information and belief the remediation work was never completed. (Exhibit H).

## C.    SCHEME TO DEFRAUD THE HOA

53.     Pursuant to New Jersey Law, a homeowner's association (HOA) is a corporation that governs a common interest community, as defined under the New Jersey Condominium Act. An HOA is controlled by the developer until the housing sales reach a certain threshold determined by the by-laws of the association at which time the control is gradually transferred to the bona fide homeowners. Only bona fide homeowners can be members of the HOA. (Exhibit I).

54.     Following the sale of 25 percent or more units two bona fide unit owners are eligible to be elected to the board of directors. Following the sale of 75 percent or more of the units of One Park, four bona fide unit owners are eligible to seek election to the board per One Park Bylaws. (Exhibit I).

55.     Under New Jersey Law, HOA Board members are fiduciaries.  Any person holding a board seat or who has been nominated for the board must make a good faith effort to disclose any financial, business, professional, or personal relationship or interest that would result or would appear to a reasonable person to result in a potential conflict of interest.

56.      Consistent with their fiduciary duties, under New Jersey Law, HOA board members may not solicit or accept any form of compensation, gratuity, or other remuneration that would

improperly influence or reasonably appear to influence the board members' decisions or would result or reasonably appear to result in a conflict of interest.

57.     Consistent with their fiduciary duties, the board of directors is empowered to make decisions related to the common interests of the homeowners, including but not limited to: adopting and amending bylaws and budgets; hiring managers, employees, agents, attorneys, independent firms and contractors; instituting or defending the community in litigation, maintaining association financial records and bank accounts; and causing additional improvements or maintenance repairs to be made.

58.     In the development of One Park, DMG Investments created One Park Condominium Association to function as the HOA for One Park Condominium complex. (Exhibit J).

59.     Beginning in 2018 and continuing through 2024, Defendants DMG Investments, DMG Park, Chiesa, Shahinian, and Giantomasi and others known and unknown to Plaintiffs did knowingly and intentionally conspire, combine, confederate and agree to commit certain offenses against Plaintiffs, that is:

a.     to devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, that affected a financial institution; and for the purpose of executing such scheme and artifice, Defendants, DMG Investments, DMG Park, Chiesa, Shahinian and Giantomasi and others did knowingly place or caused to be places in a post office and authorized depository for mail matter a thing to be sent and delivered by the U.S. Postal Service or any private or commercial interstate carrier, in violation of Title 18, United States Code, Section 1341; and

b.     to devise and intend to devise a scheme and artifice to defraud and to obtain money

and property by means of materially false and fraudulent pretense, representations, and promises, that affected a financial institution; and for the purpose of executing such scheme and artifice, Defendants DMG Investments, DMG Park, Chiesa, Shahinian, and Giantomasi and others did knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

60.    Defendants DMG Investments, DMG Park, Chiesa, Shahinian, Giantomasi and others known and unknown devised a scheme and artifice to defraud Plaintiffs and other victims by fraudulently inducing Plaintiffs and other victims to pay monthly dues to DMG Investments under the guise that these payments were for the HOA, fraudulently making withdrawals from HOA bank accounts, and transferring and converting these unauthorized withdrawals to other Bank Accounts controlled by DMG Investments.  Defendants DMG Investments fraudulently converted these unauthorized withdrawals to pay for expenses that were the responsibility of DMG Investments and DMG Park.  In order to conceal the unauthorized use of funds, Defendants DMG Investments, DMG Park, Chiesa, Shahinian, and Giantomasi and others refused to provide Plaintiff's access to HOA financial records, conducted sham elections, and organized a coup to retake control of the HOA after transfer had allegedly been made to bona fide unit owners.

61.    The object of the scheme of which Defendants, DMG Investments, DMG Park, LLC, Chiesa, Shahinian and Giantomasi, and others known and unknown were members, which began from at least as early as in or around November 2018 and continues through present day were for the co-conspirators to:

a.    Cause Plaintiff's and others to entrust funds that were supposed to be for the benefit

22

of the HOA.  DMG Investments and DMG Park created a fictitious company named DMG Property Management to assist in the execution of this scheme;

b.    Manipulate and influence the conduct of the HOA business including, but not limited to, the appointment of designated property managers, hiring of designated lawyers and law firms, and hiring of designated contractors;

c.    Unlawfully enrich the co-conspirators as a result of the scheme by causing the puppet HOA boards to award, legal, construction, and other work to entities controlled by the co-conspirators; and

d.    Defendants DMG Investments and DMG Park made unauthorized transfers of money from the respective bank accounts for purposes that were not for the benefit of the HOA or Plaintiffs, including expenditures for DMG Investments and DMG Park's own benefit.

62.    In order to achieve the objects of the conspiracy DMG Investments and DMG Park LLC, created a fictitious named DMG Property Management to execute the scheme. Defendant DMG Investments is the sole member of DMG Property Management.

63.    DMG Investments drafted an agreement between the HOA and DMG Property Management in which DMG Property Management would serve as the official management company of the HOA. (Exhibit K).

64.    DMG Property Management's duties including collecting fees from Plaintiff's and other victims, hiring and supervising staff that would be in the name of the HOA, maintain records and books of the HOA, not incur any liabilities in excess of $10,000 without the approval of the HOA.

65.    Despite not having ANY employees, and not hiring a SINGLE Employee of the HOA,

DMG Investments made unauthorized withdrawals from banks for the benefit of DMG Investments and DMG Park, obtained fraudulent insurance policies with DMG Property Management and DMG Park LLC as named insured.

66.    Defendants DMG Investments and DMG Park, used their own employees who were working from their offices in New York to manage the daily operations at One Park.

67.    Beginning in or around November 2018 – the current period DMG Investments enlisted DMG Investments employees and others to send notices to Plaintiffs and other victims via US Postal Service and wire communications requests for payments of HOA fees that were then diverted to bank accounts controlled by DMG Investments and DMG Park, LLC. (Exhibit L).

68.    It was part of the scheme that Defendants DMG Park, DMG Investments, Chiesa, Shahinian, and Giantomasi and others restricted Plaintiffs' access to financial records in order to conceal the misappropriation of funds and unauthorized withdrawals made by DMG Investments and DMG Park.

69.    In an email dated April 6, 2021, Fred Lavinthal of Chiesa, Shahinian, and Giantomasi stated that he would not provide plaintiffs with information on who was signing checks.  (Exhibit L).

70.    In another email dated April 21, 2021 Fred Lavinthal of Chiesa, Shahinian, and Giantomasi placed restrictions on the financial information that would be made available to Plaintiffs in order to conceal the unauthorized use of funds by DMG Investments and DMG Park.  Chiesa, Shahinian, and Giantomasi, DMG Investments, and DMG Park knew that money had been withdrawn and that funds were being used for unauthorized purposes.

71.    Two Certified Public Accountants, and a Certified Fraud examiner all of whom are retired agents of the Federal Bureau of Investigation examined the Association accounting records

from 2018 – 2022.

72.    In their review these three individuals reviewed bank records, invoices, cancelled checks, audited financial statements, and other financial records.

73.    In their review the three former FBI agents determined that from 2018-2022 approximately **$3,400,000.00 (THREE MILLION FOUR HUNDRED THOUSAND AND NO/100 DOLLARS)** was missing from HOA bank accounts.

74.    During this period unknown to Plaintiffs these bank accounts were controlled by DMG Investments, DMG Park and others.

75.    In their review the three former FBI agents determined that between **$300,000 (THREE HUNDRED THOUSAND AND NO/100 DOLLARS) - $700,000 (SEVEN HUNDRED THOUSAND AND NO/100 DOLLARS)** between 2018 - 2022 had been withdrawn and used for unauthorized purposes for the benefit of DMG Investments and DMG Park.

76.    In their review the three former FBI agents found that although Plaintiffs expected their funds to be used for purposes of hiring HOA personnel. Between 2018 - 2022 Not a single HOA employee had been hired by DMG Property Management, DMG Investments, or DMG Park. The three former FBI agents found that the funds had been used to pay DMG Investments employees and for other unauthorized purposes.

77.    To influence the conduct of the HOA, DMG Investments, DMG Park, and Chiesa, Shahinian, and Giantomasi and others also hired lawyers to ensure that they maintained control over the HOA.  In an email dated March 16, 2021, Fred Lavinthal of Chiesa, Shahinian, and Giantomasi stated that DMG Investments, DMG Park, LLC, and Chiesa, Shahinian, and Giantomasi, had made the decision to hire law firm Hueston McNulty to handle litigation matters for the association while

Chiesa, Shahinian, and Giantomasi would remain as lawyers for the HOA. (Exhibit O).

78.    It was part of the scheme that DMG Investments, DMG Park LLC, and Chiesa, Shahinian, and Giantomasi and others would conduct sham elections in order to maintain control of the enterprise and its funds.  At no time did DMG Investments, DMG Park, LLC, or Chiesa, Shahinian, and Giantomasi have an agreement with the enterprise to conduct elections.

79.    In March 2021 (Exhibit O) Fred Lavinthal admitted that Chiesa, Shahinian, and Giantomasi would oversee the elections for the enterprise in tandem with DMG Investments, DMG Park and others.

80.    It was part of the scheme that in or around April 7, 2021 Chiesa, Shahinian, and Giantomasi, DMG Investments, DMG Park, and others caused to be placed in a post office and authorized depository for mail matter a thing to be sent and delivered by the U.S. Postal Service and by means of wire communications in interstate commerce ballots for the 2021 Transition election. (Exhibit P).

81.    It was part of the scheme that in or around April 28, 2023 Chiesa, Shahinian, and Giantomasi, DMG Investments, DMG Park, and others caused to be placed in a post office and authorized depository for mail matter a thing to be sent and delivered by the U.S. Postal Service and by means of wire communications in interstate commerce ballots for the 2023 Transition election. (Exhibit P).

82.    To ensure that the co-conspirators would win the elections, the co-conspirators would employ deceitful tactics, such as failing to provide ballots to all voters, refusing to allow others to participate in the elections, and other means.

83.    The co-conspirators attempted to create the appearance that the elections were

legitimate and free from corruption by having attorneys from Chiesa, Shahinian, and Giantomasi conduct the elections, while not disclosing that Chiesa, Shahinian, and Giantomasi was also allegedly representing the association in addition to DMG Investments, and DMG Park, LLC.

84.    In May 2023, the co-conspirators attempted to create the appearance that control of the enterprise had been turned over to the unit owners after co-conspirators placed Jill Falgiano, Boris Ostrovsky, Wei Zhu, Chris Shortell, and Malina Persaud on the board. Upon information and belief none of these individuals were duly elected.

85.    Despite the alleged transition, DMG Property Management, an organization with zero employees and controlled by DMG Investments (its sole member) served Plaintiffs and other victims with notices that their monthly fees would be increased.  There had been no amendments to the by-laws for the increase and the increase was distributed to Plaintiffs and others via interstate carrier and electronic communications. (Exhibit Q).

86.    It was part of the scheme that Defendants DMG Investments, DMG Park, DMG Property Management, Wei Zhu, Zachary Wang and others sent notices to Plaintiffs and other victims to collect the unlawful debt. From May 2023 – August 2024, Defendants DMG Investments, DMG Park, DMG Property Management, Wei Zhu, Zachary Wang and others used interstate electronic communications and interstate carriers to intentionally deceive and defraud Plaintiffs and other victims of money, property and honest services. The purpose of this scheme was for defendants DMG Investments, DMG Park, DMG Property Management, Wei Zhu,  Zachary Wang and others to collect an unlawful debt from Plaintiffs and other victims and to acquire money and property from Plaintiffs and other victims for their own benefit.

87.    It was part of the scheme that beginning in October 2023, co-conspirators DMG Investments, DMG Park, Chiesa, Shahinian and Giantomasi, Wei Zhu, and others enacted a scheme

to revert control of the enterprise back to DMG Investments and DMG Park.

88.    It was part of this scheme that Joseph Mariniello, a lawyer hired by DMG Investments and DMG Park filed a lawsuit against Jill Falgiano and Boris Ostrovsky for breach of fiduciary duty and misappropriation of funds. (Exhibit R).

89.    Jill Falgiano and Boris Ostrovsky countersued Wei Zhu and others who were assisting the co-conspirators DMG Investments and DMG Park LLC.  (Exhibit S).

90.    After the removal of Jill Falgiano and Boris Ostrovsky, Jacky He, Malina Persaud, DMG Investments, DMG Park, Wei Zhu, Chiesa, Shahinian, and Giantomasi and others continue to control the enterprise to continue the unauthorized transfers of money and use of those funds for unauthorized purposes.

**DESIGN AND CONSTRUCTION DEFECTS**

91.    McGowan Builders acted as the general contractor and construction manager of the construction of One Park, including the construction of Plaintiffs' units and the common areas.

92.    Architectura drafted the architectural plans and designs of One Park.

93.    Upon information and belief, One Park's construction was completed on or around April 2018.

94.    However, upon completion of One Park's construction and moving into their individual units, Plaintiffs noticed significant design and other defects with respect to their residential units, as well as One Park's common elements – including the automated parking garage. Plaintiffs learned in January 2024 that McGowan, Architectura, DMG Investments, P.C. Richards and others knew of these issues not limited to HVAC defects, defects on the balconies including spalling, and water infiltration into individual units and common areas due to improper slope of the balconies and

lack of appropriate watertight seals in the exterior building envelope.

95.     Upon information and belief, the square footage of the Plaintiffs' units are estimated to be 11 to 14 percent smaller than the dimensions stated in the marketing materials provided to the Plaintiffs and the Offering Statement.

96.     Upon information and belief, in January 2024 Plaintiffs learned that McGowan and others knew of defects and issues in the units of the property which include but are not limited to the following:

a.     Deficiencies within the HVAC systems, including poor operation of both the heating and air conditioning functions; despite advertised "*state of the art air infiltration systems*" units experience excessive discharge from vents, "Smart Control Units" do not match those advertised, and multi-zone controls do not appear as advertised, resulting in multiple residents reporting that their units are either malfunctioning or not functioning at all, with some residents going without heat during the winter or air conditioning during the summer since purchasing their unit.

•     Upon information and belief, DMG Park has not addressed these issues despite repeated notice;

b.     Defendant DMG Park promised an HVAC system that was "high performance," "zone controlled," and that would provide "[m]ulti-zone climate control" that would allow for "bespoke heating and cooling from room to room with Daikin VRV air system heating with heat recovery." DMG, McGowan, Architectura and others knew that the HVAC systems had been improperly installed.

•     Upon information and belief, Defendants poorly designed the HVAC system and intentionally did not utilize appropriate design and construction methods in installing the

HVAC system. Consequently, the system is not effective at producing heat on extremely cold days or cold air on extremely hot days. Subcontractors were directed to proceed with commissioning of these systems against their professional judgement and the systems were commissioned in conditions that were not appropriate.

•      Installation deficiencies related to ceiling plenum mounted individual HVAC systems are ambient, specifically the impracticable placement of the mechanical units, rendering access for routine maintenance logistically difficult, if not impossible. Inaccessible utility panels are present in the closets of multiple units. Vents in closets are not connected to ductwork located above the ceilings. It is indeterminable at this time to ascertain if the plenum space is being used for return air, or if the events were erroneously installed non-functional;

c.      Multiple units experience significant plumbing issues such as frequent backups resulting in feces populating the showers after flushing the toilets and toilet water populating the kitchen sinks after flushing. Poorly vented plumbing drain lines resulting in sluggish drains, weak toilet flushes, prominent sewer odors, belching drains, and bubbling toilets. The performance of the plumbing is dramatically inconsistent throughout all units. Defendants DMG Park, DMG Investments, McGowan Builders, and Architectura knew that hot water supplies would not function "on-demand" as promoted, and hot and cold-water availability would cycle throughout the day. Toilet, shower, and bathtub drainage perform poorly resulting in wastewater backups and leaks in below units. Sinks, toilet fixtures, and supply connections leak consistently causing damage to casework and finishes such as vanity and flooring. Shower enclosures, flooring, and underlayment are improperly installed, creating leaks below. Master bathroom slabs are made of artificial stone though were advertised as Italian marble. The grout between stones is shading on the floor. Toilets have been installed improperly, with

some device outlets at 12" placed on a closet flange with 10" offsets leading to leaks of effluent. This was potentially caused by the improper location of chase partitions but was not corrected when plumbing was installed.

•      Upon information and belief, DMG Park has not addressed these issues.

•      Defendant DMG Park promised a "condensing boiler that would provide instant access to hot water."

•      Upon information and belief, Defendants used poor design for the plumbing system and used cheap and inadequately sized PVC piping throughout the units resulting in frequent backups, leaks, and other issues.

•      Upon information and belief, these issues are "unfixable.";

d.      Multiple units have cracked windowpanes, damaged exterior window frames, and windows and unit doors that do not seal properly;

e.      Multiple units have defective balcony doors and windows that do not lock and remain closed, including during the winter months – i.e., Ms. Leyva has come home during winter months to find her balcony door wide open;

f.      Improperly installed window systems that also were not waterproofed as required in addition to having exposed framing joints that should have been in a concealed or inconspicuous location;

g.      Defendants McGowan Builders, DMG Park, DMG Investments and others knew that installed kitchen cabinetry did not conform to descriptions within the original sales literature in terms of quality, finish, and durability. As publicized, cabinets were to be custom white lacquer, while the installed cabinets are constructed of an extremely thin "thermofoil" finish over a fiberboard core, which is not water or impact resistant. The narrow side panels are

Formica laminated with many parts falling off. Alignment and installation are inconsistent with cabinets appearing as if they are falling off the kitchen walls. Several cabinet units have fallen off of the walls. Cabinet doors are out of alignment making their operation difficult. Installations are often incomplete with loose cabinetry fillers;

h.     There are consistent and universal deficiencies in the operation of the kitchen range/oven combinations specifically with pilot lights that self-activate at random hours, constituting a potential life-safety hazard. Electrical systems in many units have deficiencies resulting in tripped breakers and overheating of electrical panels and outlets, so-called "enhanced wiring infrastructure" of the electrical system with "exceptional access to cutting edge communications and entertainment technology" and inclusive of lighting and HVAC control were not installed as advertised;

i.     Ponding water on balconies; railing posts base plates improperly seated and have sharp and raised edges because the balconies were not pitched away from the exterior walls of the building to provide for positive drainage. The inserts for the glass and steel "handrails" were installed in a manner that is contributing to the deterioration identified in the undersides of the concrete balcony slabs. Posts inserts were drilled too deeply, filled with grout, and over-topped with an adhesive sealant. The result is an improper installation of the post escutcheon at the top of the balcony and failure of the concrete structure on the underside presenting a life-safety issue. Several balcony glass fixtures have fallen from the building;

j.     All units contain engineered finished flooring that is of low-quality material, exhibiting pronounced splits, checks, knots, and sap lines inconsistent with the overall appointment of the individual units. Defendant Appalachian Flooring was sent notices to cure by the General Contractor who advised that the flooring shipped contained numerous defects,

not limited to oversanding, splits, excessive delamination, inadequate wear layers, and damaged tongues. The flooring was installed despite these issues and upon information and belief proper product installation guidelines were not adhered to.  In one unit the flooring had split producing splinters that injured the owner, while crowning of the flooring exists in other units;

•      Upon information and belief DMG Park has not addressed these issues, despite repeated notice.

•      Upon information and belief the widening cracks are related to building settlement.

•      Upon information and belief these issues are unfixable;

k.      Poorly designed mechanical systems that fail to maintain an adequate thermal environment resulting in high humidity within the units, poor indoor air quality, inadequate ventilation, poor water distribution, and air distribution;

l.      Multiple units have observed loud noises, smells, and other disturbances emanating from the walls, windows, ventilation systems, and/or windows of their units. Residents can regularly smell food that their neighbors are cooking, hear the bouncing of basketballs from the main lobby in their unit, and can hear the retrieval and parking of vehicles in the automated parking garage; There are consistent musty/moldy odors emanating from unknown sources traversing demising walls;

m.      Individual washer/dryer rooms with direct vent devices have no ducting or venting for dryer exhaust or for fresh air intake;

n.      Multiple units have and continue to experience bubbling within ceilings due to severe water infiltration and leaks. Water dripping can frequently be heard within the interior of the units;

o.     Multiple units have uneven floors and walls that are not level; and

p.     Countertops were installed unevenly, contain excessive or improperly joined seams, cracks, splits, and in some instances, backsplashes do not match countertops installed over other areas.

97.    Upon information and belief, most of this work was performed by the Subcontractors.

**Common Area Defects**

98.    In addition to defects in Plaintiffs' individual units, One Park has a number of defects existing in common areas such as:

a.     Use of substandard practices to install the mechanical within the building including but not limited to using improper equipment to cut the refrigerant lines resulting in copper shavings being recirculated within the system;

b.     Ongoing random leaks from common element plumbing and HVAC equipment;

c.     Common areas have global fit, finish, and repair deficiencies throughout hallways and common areas, e.g. paint and wallpaper failures, water damage, and cracks and staining on walls and ceilings;

d.     Water infiltration from exterior curtain walls and glazing;

e.     Consistent musty/moldy odors detected in the corridors;

f.     Corrosion and deterioration of stainless-steel trim elements, and other components of the swimming pool enclosure due to improper pool maintenance;

g.     Deterioration of fittings in sauna areas;

h.     Nonfunctional or inoperable HVAC dehumidification equipment in the pool area;

i.     Undetermined deficiencies with the foundation of the building that has resulted in damage, including the faux terrazzo flooring finish in the entrance vestibule;

j.     Water infiltration at main entry vestibule, workout room, and pool enclosure;

k.     The squash court (turned into a basketball court without notice or approval, either from unit owners or, upon information and belief, the Association) has not been insulated and/or soundproofed properly such that Plaintiffs can hear loud, disruptive noises while the basketball court is in use (it is acknowledged that the management company issued notice in April 2022 of its intent to insulate the ceiling of the basketball court);

l.     Water damage around the exterior door to the sauna, and lower lobby area, and damage along the surrounding balcony;

m.    Water-ponding at numerous locations on the roof, with moisture detected below roof membrane/insulation at drains;

n.     The long-standing water-ponding has allegedly resulted in the roof warranty being voided;

o.     Elevator shaft access hatches are improperly secured and weighted with concrete blocks, buckets, and sandbags presenting a potential life-safety issue;

p.     Improper installation of exterior balcony railing systems, particularly rail posts, which were over-drilled, damaging the balcony concrete structure, causing extensive repair attempts with finish installation issues causing trip hazards for residents;

q.     Questionable use of pedestrian grade coating on concrete "eyebrows" and related curbs surrounding rooftop public areas;

r.     Potential design and installation issues with the exterior cladding on the building, potentially caused by inconsistent fastening and underlayment deficiencies that may lead to excessive moisture exposure and premature deterioration of the exterior cladding panels;

s.    Water infiltration due to a burst pipe that lead to severe water infiltration and leaks impacted the building foundation and lower lobby roofing system resulting in significant damage to the structure and potential damage to the foundation of the building;

t.    The trash chutes on all floors are inoperable resulting in significant trash pileups and the increased presence of rodents and roaches; and

u.    The electronic fobs are inoperable.

v.    Poorly designed luxury six car garage that had to be converted to a partial refuse room due to inadequate spacing, mechanical issues, and poor building structure.

99.    Upon information and belief, a portion of this defective work was performed by individuals hired and supervised by McGowan, DMG Park, and DMG Investments.

## First Count
### (BREACH OF CONTRACT AGAINST DMG INVESTMENTS, DMG PARK, AND JOHN DOES 1-100)

100.    Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

101.    Each of the Plaintiffs entered into a valid and binding contract with DMG Park and DMG Investments by executing the Offering Statement, its amendments and their respective Subscription and Purchase Agreements, wherein DMG Park and DMG Investments agreed to and were obligated to convey the Unit to Plaintiff in accordance with the provisions of the Agreement and the Offering Plan and the representations contained therein, including that One Park would be constructed in accordance with New Jersey's New Home Warranty and Builder's Registration Act for new home warranty and standards for construction and quality of the structural elements and components of a new home.

102.     Plaintiffs are also members of the Association and have a beneficial interest in the common elements administered, operated, and maintained by the Association.

103.     DMG Park and DMG Investments have breached its obligations by conveying units to Plaintiffs that fail to adhere to the terms of the Offering Statement, its amendments and their respective Subscription and Purchase Agreements, including but not limited to:

a.     Defects and deficiencies in the installation, construction, and/or design of the HVAC systems in the Units;

b.     Defects and deficiencies in the installation, construction, and/or design of the and plumbing systems in the Units;

c.     Defects and deficiencies in the installation, construction, and/or design of the pool;

d.     Defects and deficiencies in the installation, construction, and/or design of the balconies;

e.     Defects and deficiencies in the installation, construction, and/or design of the windows;

f.     Defects and deficiencies in the installation, construction, and/or design of the common areas;

g.     Failing to maintain the common areas;

h.     Defects and deficiencies in the installation, construction, and/or design of the pool and aquatic area;

i.     Defects and deficiencies in the installation, construction, and/or design of the parking garage;

j.     Defects and deficiencies in the installation, construction, and/or design of the

elevators;

k.      Defects and deficiencies in the installation, construction, and/or design of the

lobbies.

### **Second Count**
### (NEGLIGENCE AGAINST MCGOWAN BUILDERS, D&B
### SERVICE GROUP, ARCHITECTURAL MANUFACTURING
### WINDOWS, AND JOHN DOES 1-100)

104.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing

paragraphs as if fully set forth herein.

105.    Upon information and belief, Mc Gowan Builders was contracted by DMG Park to act

as the general contractor and construction manager of the construction of One Park.

106.    McGowan Builders was responsible for supervision of the construction of

development, hiring and supervising the work of subcontractors, filing the requisite permits with the

borough, conducting inspections of the work of subcontractors, and ensuring that construction was

completed to plan.

107.    D&B Service group was hired by McGowan Builders to commission the HVAC

systems at One Park Condominium as an HVAC subcontractor for the project.

108.    Architectural Manufacturing was the supplier of windows for the project at One Park.

109.    Upon information and belief, the Subcontractors performed construction work at the

Condominium and in Plaintiffs' units specifically, and Architectural Manufacturing Windows

supplied Windows.

110.    Plaintiffs have experienced defects in their Units and the common areas which include,

but are not limited to:

a.      Defects and deficiencies in the installation, construction, and/or design of the HVAC

38

systems in the Units;

b.      Defects and deficiencies in the installation, construction, and/or design of the and plumbing systems in the Units;

c.      Defects and deficiencies in the installation, construction, and/or design of the flooring in the Units;

d.      Failing to install custom-made kitchen cabinetry of the kind and quality promised;

e.      Defects and deficiencies in the installation, construction, and/or design of the balcony doors and window locks;

f.      Defects and deficiencies in the installation, construction, and/or design of the balconies;

g.      Defects and deficiencies in the installation, construction, and/or design of the windows;

h.      Defects and deficiencies in the installation, construction, and/or design of the electrical systems;

i.      Defects and deficiencies in the installation, construction, and/or design of the kitchen ranges;

j.      Defects and deficiencies in the installation, construction, and/or design of the venting for clothes drying machines;

k.      Defects and deficiencies in the installation, construction, and/or design of the common areas;

l.      Defects and deficiencies in the installation, construction, and/or design of the pool and aquatic area;

m.    Defects and deficiencies in the installation, construction, and/or design of the parking garage;

n.    Defects and deficiencies in the installation, construction, and/or design of the elevators; and

o.    Defects and deficiencies in the installation, construction, and/or design of the lobbies.

111.    As a result of the defects and deficiencies in the installation, construction, and/or design, as well as other issues set forth herein the Plaintiffs have suffered property damage to their units and to the common areas.

112.    Given the numerous defects found in Plaintiffs' units and the common areas, McGowan Builders, D&B Service Group, Architectural Manufacturing Windows, P.C. Richards, and John Does 1-100 breached and failed to perform their obligations under their agreement with DMG Park by failing to properly perform their duties and responsibilities as the general contractor and construction manager and subcontractors in accordance with the standards that are generally required to be followed by general contractors, construction managers, and subcontractors in the State of New Jersey.

**WHEREFORE**, Plaintiffs demand judgment against Defendants, Mc Gowan Builders, Inc., the Subcontractors, and John Does 1-100 for:

a.    Damages, including but not limited to compensatory, incidental, and consequential damages;

b.    Prejudgment and post judgment interest;

c.    Reasonable costs of suit;

d.    Attorneys' fees; and

e.      Such other relief as the court may deem equitable, necessary, and just.

**<u>Third Count</u>**
**(LEGAL MALPRACTICE AGAINST CHIESA, SHAHINIAN, AND GIANTOMASI, AND JOHN DOES 1-100)**

113.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

114.    Chiesa, Shahinian, and Giantomasi and John Does 1-100 drafted the Public Offering Statement for One Park. Chiesa, Shahinian, and Giantomasi owed a duty of care to prospective purchasers to ensure that the Public Offering Statement did not contain material omissions and was accurate in regards to the design, construction, and representations made in the Public Offering Statement.

115.    Upon information and belief, Chiesa, Shahinian, and Giantomasi and John Does 1-100 breached their duties of care that they each owed, respectively, to the Plaintiffs and negligently made a number of material misrepresentations to the Plaintiffs and to the Association, including but not limited to those representations set forth above, as well as other misrepresentations and omissions including, without limitation:

a.      The actual square footage of each unit;

b.      that each apartment would be pre-wired for smart features;

c.      that each apartment would include multi-zone climate control;

d.      that One Park would have a condensing boiler for instant access heat and hot water;

e.      that One Park would have a backup generator for emergency services;

f.      that the parking garage was fully automated;

g.      That the building contained adequate parking;

h.      That building had an intercom system; and

i.      That there were limitations on the automated parking garage system.

116.    Such representations, however, were false.

117.    Plaintiffs reasonably relied upon the representations made by Chiesa Shahinian & Giantomasi , and John Does 1-100 to their detriment, in that the Plaintiffs were thereby induced to purchase units in the development together with an undivided pro-rata interest in the Association's common elements, that in fact were in various ways different from, defective, sub-par, deficient, and contrary to the information represented by DMG Park, DMG Investments, Mark Sokolich, and Chiesa Shahinian & Giantomasi PCand John Does 1- 100.

118.    Said misrepresentations and omissions also constitute misrepresentations to

119.    the Association as an entity, to the extent that the Association is the only person or entity that may be determined to have standing to sue these defendants for defects in the common elements and facilities.

120.    As a direct, proximate, and foreseeable result of the misrepresentations and omissions by Chiesa Shahinian & Giantomasi PC and John Does 1-100, the Association and the Plaintiffs have incurred or sustained damage and will in the future incur additional damages.

121.    Given the numerous defects found in Plaintiffs' units and the common areas, Chiesa, Shahinian, and Giantomasi and John Does 1-100 breached and failed to perform its obligations under its agreement with DMG Park by failing to properly perform their duties and responsibilities by failing to properly disclose the construction defects in the Public Offering Statement.

122.    Chiesa, Shahinian, and Giantomasi owed a common law duty, and/or a derivative

contractual duty to Plaintiffs to properly disclose the defects, and not omit information that would be material to potential buyers at One Park in accordance with the standards of their respective professional disciplines, which they failed to do.

123.    As a direct, proximate, and foreseeable result of the negligence and/or professional malpractice of Chiesa, Shahinian, and Giantomasi, the Plaintiffs have been injured in that portions of One Park and/or its subcomponents and/or other common elements and/or individual units and/or other property incurred or sustained damage; the Plaintiffs have already incurred and will incur substantial expense to repair and/or replace the construction defects and common elements and other property, and will in the future incur additional expense, and have otherwise been injured.

**WHEREFORE**, Plaintiffs demand judgment, jointly and severally, against Defendants, Chiesa, Shahinian, and Giantomasi, and John Does 1- 100 for:

    a.    Damages, including but not limited to compensatory, incidental, and consequential damages;

    b.    Prejudgment and post judgment interest;

    c.    Reasonable costs of suit; and

    d.    Attorneys' fees; and such other relief as the court may deem equitable, necessary, and just.

### Fourth Count
### (FRAUDULENT MISREPRESENTATION AGAINST DMG PARK, DMG INVESTMENTS, ARCHITECTURA, MCGOWAN BUILDERS, P.C. RICHARD, AND JOHN DOES 1-100)

124.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

125.    As stated above, DMG Park, DMG Investments, Architectura, McGowan , P.C. Richard and John Does 1-100 made a number of fraudulent misrepresentations and/or omissions to

Plaintiffs prior to their purchase of their respective units, including, but not limited to:

    a.      The misrepresentation of the condition of the appliances within the unit

    b.      he misrepresentation of the origin of the appliances of in their units

    c.      The omission that the appliances were refurbished

    d.      Defendants provided false and misleading marketing, advertising, and promotional materials as to the fact that the appliances in the Plaintiffs' units were new.

126.    Upon information and belief, the appliances in Plaintiffs' units were refurbished and not in new condition.

127.    DMG Park, DMG Investments, Architectura, McGowan, P.C. Richard, and John Does 1-100 knew that its misrepresentations and omissions were false at the time that they were made.

128.    DMG Park, DMG Investments, Architectura, McGowan, P.C. Richard, and John Does 1-100 made the misrepresentations and omissions with the intent to deceive the Plaintiffs into purchasing something that they did not intend to provide.

129.    DMG Park, DMG Investments, Architectura, McGowan, P.C. Richard, and John Does 1-100's misrepresentations and omissions were made wantonly and with willful disregard for the truth.

130.    DMG Park, DMG Investments, Architectura, McGowan, P.C. Richard, and John Does 1-100 intended for the Plaintiffs to rely upon its misrepresentations and omissions, and Plaintiffs did reasonably rely on those misrepresentations and omissions to their detriment, in that the Plaintiffs were thereby induced to purchase units in the development together with an undivided pro-rata interest in the common elements and facilities that in fact were in various ways different, defective,

sub-par, deficient, refurbished, and contrary to the information represented by DMG Park, DMG Investments, Architectura, McGowan, P.C. Richard and John Does 1-100.

131.    Said misrepresentations and omissions also constitute misrepresentations to the Association as an entity, to the extent that the Association is the only person or entity that may be determined to have standing to sue these defendants for defects in the common elements and facilities.

132.    The individuals making misrepresentations and omissions to Plaintiffs worked for DMG Park,  DMG Investments, Architectura, McGowan, and P.C. Richard.

133.    In reliance on the Defendants' misrepresentations and omissions, including without limitation the marketing, advertising, and promotional materials provided by DMG Park, DMG Investments, Architectura, McGowan, and P.C. Richard, and John Does 1-100, Plaintiffs purchased their respective units.

134.    As a direct, proximate, and foreseeable result of the misrepresentations and omissions of DMG Park, DMG Investments, Architectura, McGowan, and P.C. Richard and John Does 1-100, the Plaintiffs and the Association have incurred or sustained damage and will in the future incur additional damages.

WHEREFORE, Plaintiffs demand judgment, jointly and severally, against Defendants, DMG Park LLC, DMG Investments LLC, Architectura, McGowan, and P.C. Richard and John Does 1-100 for:

a.    Damages, including but not limited to compensatory, incidental, and consequential damages;

b.    Punitive damages;

c.    Prejudgment and post judgment interest;

d.    Reasonable costs of suit;

e.   Attorneys' fees; and

f.   Such other relief as the court may deem equitable, necessary, and just.

**Fifth Count**
**(VIOLATION OF 15 U.S.C. § 1703(a)(1)(D), (2)(A)-(D) (ILSA VIOLATIONS AGAINST DMG PARK, DMG INVESTMENTS, MCGOWAN BUILDERS, ARCHITECTURA, P.C. RICHARD, AND CHIESA, SHAHINIAN, AND GIANTOMASI, AND JOHN DOES 1-100)**

135.   Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

136.   ILSA prohibits any developer or agent from displaying or delivering to prospective purchasers or lessees advertising and promotional material which is inconsistent with any information required to be disclosed in the property report.  Employing any device, scheme, or artifice to defraud, to obtain, money or property by means of any unture statement of a material fact, or any omission to state a material fact necessary in order to make statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision, and to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceipt upon a purchaser.

137.   DMG Investments, DMG Park, McGowan Builders, Architectura, P.C. Richard, and Chiesa Shahinian, and Giantomasi are subject to the requirements of ILSA and have violated the statute.

138.   In January 2024, Plaintiff's learned that DMG Investments, DMG Park, McGowan Builders, Architectura, P.C. Richard, and Chiesa Shahinian, and Giantomasi intentionally provided Plaintiffs and other victims false information regarding the condominium units that Plaintiffs purchased.

139.   DMG Investments, DMG Park, McGowan Builders, Architectura, P.C. Richard, and

Chiesa Shahinian, and Giantomasi directly or indirectly used means or instruments in interstate commerce in the development of One Park and participated in the development of the public offering statement and other marketing materials that were provided to Plaintiffs, and other victims. In January 2024 Plaintiffs learned DMG Investments, DMG Park, McGowan Builders, Architectura, P.C. Richard, and Chiesa Shahinian, and Giantomasi participated in a scheme to defraud Plaintiffs and other victims by providing false and misleading statements in the public offering statement and marketing materials that Plaintiffs and other victims relied on.  These materially false and omitted statements are not limited to:

    a.    The actual square footage of each unit;

    b.    that each apartment contained appliances that were new;

    c.    that the building and Plaintiffs' units had been adequately waterproofed;

    d.    that the balconies were not waterproofed, did not contain the proper slope for drainage, and were already spalling due to serious water infiltration;

    e.    that One Park had 25,000 square feet of amenities;

    f.    that the pool was designed, installed, and working according to the building code;

    g.    that there were defects and deficiencies in the design and or construction of the HVAC due to systems that were intentionally installed in a manner not consistent with  professional standards;

    h.    that the building contained adequate parking;

    i.    that the building had an intercom system;

    j.    that there were limitations on the automated parking garage system;

    k.    that the plumbing systems in the units has been inadequately installed; and

l.      that the Condominium Board was not in control of the developer.

140.    Plaintiffs relied on these misrepresentations in order to purchase their units.

**WHEREFORE,** Plaintiffs demand judgment, jointly and severally, against Defendants, DMG Park LLC, DMG Investments LLC, Architectura, McGowan Builders, P.C. Richard, Chiesa, Shahinian, and Giantomasi, and John Does 1-100 for:

a.      Damages, including but not limited to compensatory, incidental, and consequential damages;

b.      Punitive damages;

c.       Prejudgment and post judgment interest;

d.      Reasonable costs of suit;

e.      Attorneys' fees; and

f.      Such other relief as the court may deem equitable, necessary, and just.

## <u>Sixth Count</u>
### (VIOLATION OF NY GENERAL BUSINESS LAW § 349 AGAINST DMG PARK, DMG INVESTMENTS, MCGOWAN, ARCHITECTURA, P.C. RICHARD, AND JOHN DOES 1-100)

141.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

142.    New York General Business Law § 349 protects consumers from deceptive business practices in consumer-oriented businesses.

143.    DMG Investments, DMG Park, McGowan Builders, Architectura, and P.C. Richard, are subject to the requirements of New York General Business Law § 349 and have violated the statute.

144.    In January 2024, Plaintiffs learned that Defendants DMG Investments, DMG Park, McGowan Builders, Architectura, and P.C. Richard participated in a scheme to resell to Plaintiffs and other victims refurbished appliances as new.

145.    Due to the deception of defendants DMG Investments, DMG Park, McGowan Builders, Architectura, and P.C. Richard, Plaintiffs have been injured.

146.    Defendants DMG Investments, DMG Park, McGowan Builders, Architectura, and P.C. Richard intentionally deceived Plaintiffs in an effort to coerce Plaintiffs to purchase units.

**WHEREFORE,** Plaintiffs demand judgment, jointly and severally, against Defendants, DMG Park LLC, DMG Investments LLC, Architectura, McGowan, P.C. Richard, and John Does 1-100 for:

    a.    Damages, including but not limited to compensatory, incidental, and consequential damages;

    b.    Punitive damages;

    c.    Prejudgment and post judgment interest;

    d.    Reasonable costs of suit;

    e.    Attorneys' fees; and

    f.    Treble damages

## <u>Seventh Count</u>
### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") §18 U.S.C. 1961(c) AGAINST DMG INVESTMENTS, DMG PARK, DMG PROPERTY MANAGEMENT, MCGOWAN BUILDERS, ARCHITECTURA, CHIESA, SHAHINIAN, AND GIANTOMASI, P.C. RICHARD, YUANLIU "JACKY" HE, WEI ZHU, HUIJIE LYU, ZACHARY WANG)

147.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

148.    Plaintiffs bring this claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961(c) on behalf of themselves and against Defendants DMG Investments, DMG Park, DMG Property Management, McGowan Builders, Architectura, Chiesa, Shahinian, and Giantomasi , P.C. Richard, Yuanliu He, Wei Zhu, Huijie Lyu Zachary Wang, and unknown John Does.

149.    18 U.S.C. section 1962(c) provides that "[i]t shall be unlawful for [1] any person [2] employed by or associated with any enterprise [3] engaged in, or the activities of which affect, interstate or foreign commerce, [4] to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs [5] through a pattern of racketeering activity . . . ."

150.    Yuanliu "Jacky" He is a "person." Defendant Yuanliu "Jacky" He is a "person" as that term is defined in 18 U.S.C. § 1961(3) because he is an "individual capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3).

151.    Yuanliu "Jacky" He is associated with the DMG Investments Enterprise. The DMG Investments Racket constitutes an "enterprise" (the "DMG Investments Enterprise") within the meaning of 18 U.S.C. § 1961(4), which defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

152.    "An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." United States v. Turkette, 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981). While the very concept of an association in fact is expansive, the Supreme Court has nevertheless found that an association-in-fact enterprise must have three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." Almanza v.

United Airlines, Inc., 851 F.3d 1060, 1067 (11th Cir. 2017).

153. As described herein, the DMG Investments Enterprise consists of individuals and legal entities who associated with each other for a common purpose of engaging in a course of conduct. Specifically, the individuals and entities who associated together to form the DMG Investments Enterprise are: DMG Park, DMG Property Management, McGowan Builders, Architectura, Chiesa, Shahinian, and Giantomasi, P.C. Richard, Yuanliu He, Wei Zhu, Huijie Lyu, and Zachary Wang, as well as currently unknown John Does. The course of conduct these individuals associated to pursue was defrauding consumers like Plaintiffs by an interstate scheme to sell Plaintiffs residential real estate that Defendants knew contained material defects to coerce Plaintiffs to purchase residential units and causing financial losses, and by sending Plaintiffs and other victims invoices for HOA fees via the interstate carrier and electronic communications that Plaintiffs believed would be used for the benefit of the Homeowner's Association, but instead were deposited into a bank account for the benefit of the Enterprise and causing financial losses to the Plaintiffs.

154. The DMG Investments Enterprise's purpose was to enrich its members through the financial victimization of consumers like Plaintiffs. Specifically, the Enterprise's purpose was to build a sustainable scam selling materially defective real estate, and diverting HOA fees for the benefit of Plaintiff's property to a bank account created to unjustly enrich the Enterprise and thereby causing a financial loss to the Plaintiffs.

155. Each of the members of the DMG Investments Enterprise knew about the general nature of the enterprise and knew that the enterprise extended beyond their individual role. The nature and structure of these scams were widely known across the enterprise. The DMG Investments Enterprise had longevity sufficient to permit Yuanliu "Jacky" He and his associates to pursue the enterprise's purpose. The DMG Investments Enterprise was in existence at least as of September

2018, when a representative of DMG Park and DMG Investments' sales office told Mr. Giraldo and Ms. Rodriguez's mortgage appraiser that 44 of One Park's units were under contract as of September 2018, that the developer and builder were not in control of the Homeowners' Association (i.e. HOA) as of September, 2018, and no single entity (e.g. same individual, investor group, corporation) owned more than 10% of the total units in the project as of September 2018.

156. DMG Investments Enterprise was aware of serious issues such as insufficient parking, severe water infiltration, defective balconies, damage to the building's foundation, a non-functioning pool, sauna, and dry spa, common elements that did not match the descriptions in the marketing materials, non-functional HVAC systems, malfunctioning plumbing systems that were incapable of delivering consistent hot water to Plaintiff's units, and that Defendants knowingly participated in a scheme to sell Plaintiffs refurbished appliances as new at the time of their public offering statement and marketing, advertising, and promotional materials produced by DMG Investments and DMG Park in collaboration with, McGowan Builders,  Architectura, Chiesa, Shahinian, and Giantomasi, and others,  state that the property provides "the opportunity to live in one of the few luxury residential developments along the Palisades Cliff," "beautifully designed condominium units," and "High Performance Energy Efficient zone controlled Daikin systems".

157. The DMG Investments Enterprise qualifies as a closed-ended enterprise because the predicate acts occurred over a period exceeding two years (from September 2018 to at least January 2024). The DMG Investments Enterprise also qualifies as an open-ended enterprise because the DMG Investment Enterprise fraudulent scheme was ongoing when discovered by Plaintiffs in January 2024. The DMG Investment Enterprise's business has historically been structured around fraudulent advertising and selling condominiums with material defects unknown to the consumer and using HOA money intended for property development for the enterprise's benefit. Committing these

predicate acts has become a regular way of doing business among these entities and individuals. This is exemplified by the fact that the DMG Investment Enterprise has persisted in committing predicate acts for, at a minimum, almost a year after the Plaintiffs learned of the fraudulent scheme. This is further highlighted by DMG Investments listing the false marketing information on its company website, https://dmginvestments.com/portfolio/, with a hyperlink to https://liveatonepark.com/, both electronic communications. Because the predicate acts alleged herein are a way of doing business that DMG Investments Enterprise members have engaged in for years, they are highly likely to reoccur and may even be ongoing at the time of this filing.

158.    The DMG Investments Enterprise was engaged in interstate commerce. DMG Investments Enterprise was selling condominiums to consumers across the United States and consisted of coconspirators in more than one state who routinely communicated with each other across state lines.

159.    Yuanliu "Jacky" He Conducted and Participated in the Affairs of the DMG Investments Enterprise. RICO "liability depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their own affairs." Reves v. Ernst & Young, 507 U.S. 170, 185 (1993). Through the commission of myriad predicate acts, discussed below, Yuanliu "Jacky" He was not merely conducting his own affairs through a pattern of racketeering activity. Yuanliu He was, rather, engaging with the DMG Investments Enterprise through this pattern of racketeering activity. The racketeering activity was, in other words, a modality through which Yuanliu "Jacky" He interfaced with other members of the DMG Investments Enterprise which were legally distinct from Yuanliu "Jacky" He, for example, McGowan Builders, Architectura, Chiesa, Shahinian, and Giantomasi, P.C. Richard, Wei Zhu, Huijie Lyu, Zachary Wang, DMG Investments, DMG Property Management, and DMG Park.

160.    Yuanliu "Jacky" He's participation in the DMG Investments Enterprise was also not mere passive observation. Yuanliu "Jacky" He conducted the affairs of the DMG Investments Enterprise in every sense of the word.

161.    Yuanliu "Jacky" He is the Chief Executive Officer of DMG Investments, the sole member of DMG Park and the sole member of DMG Property Management.

162.    Yuanliu "Jacky" He Participated in and Conducted the Affairs of the DMG Investments Racket through a Pattern of Racketeering Activity.

163.    18 U.S.C. § 1961(1) defines a pattern of racketeering activity as "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years . . . ."

164.    18 U.S.C. § 1961(1) defines racketeering activity to include "any act which is indictable under" specified provisions of the U.S. Code. Among the specified provisions are: (1) 18 U.S.C. § 1341 (relating to mail fraud) and (2) 18 U.S.C. § 1343 (relating to wire fraud).

165.    Pursuant to Federal Rules of Civil Procedure Rule 8(d)(2), Plaintiffs set forth two coincident and parallel statements of how Yuanliu "Jacky" He participated in and conducted the affairs of the DMG Investment Enterprise: (1) by aiding and abetting the commission of at least two predicate acts; and (2) by directly committing at least two predicate acts.

*Yuanliu "Jacky" He violated 18 U.S.C. § 1962(c) by aiding and abetting the commission of at least two predicate acts.*

166.    Yuanliu "Jacky" Hu, as part of the DMG Investment Enterprise, violated 18 U.S.C. § 1962(c) by aiding and abetting the commission of at least two predicate acts.

167.    "One who aids and abets two predicate acts can be civilly liable under RICO. Petro-Tech, Inc. v. Western Co. of North America, 824 F.2d 1349, 1356 (3d Cir.1987). To establish civil

liability for aiding and abetting, the plaintiffs must show: (1) that the defendant was generally aware of the defendant's role as part of an overall improper activity at the time that he provides the assistance; and (2) that the defendant knowingly and substantially assisted the principal violation." Cox v. Adm'r United States Steel & Carnegie, 17 F.3d 1386, 1410 (11th Cir. 1994).18 179.

168.    The use of electronic communications to sell condominium units to the Plaintiffs based on a scheme to defraud the Plaintiffs involved two predicate acts of wire fraud committed by members of the DMG Investments Enterprise.

169.    The use of an interstate carrier, to intentionally deceive and defraud Plaintiffs of money, property, or honest services by selling Plaintiff's used products as new involved two predicate acts of mail fraud committed by members of the DMG Investments Enterprise.

170.    The fraudulent use of the HOA's money for the benefit of the enterprise continuingly for multiple years involved two predicate acts of wire fraud committed by members of the DMG Investments Enterprise.

**WHEREFORE**, Plaintiffs demand judgment, jointly and severally, against Defendants, for:

a.    Restitution and/or other equitable relief, including without limitation disgorgement of all revenues, profits, and unjust enrichment that Defendants obtained from as a result of their unlawful, unfair, and deceptive business practices described herein;

b.    Damages three times the damages the Plaintiffs have sustained;

c.    Prejudgment and post judgment interest;

d.    Reasonable costs of suit;

e.    Attorneys' fees;

f.      An accounting of all funds received and paid out by One Park Condominium Association for the time period covering 2018-2024;

g.      An accounting of all funds paid to Yuanliu He, DMG PARK, DMG INVESTMENTS, DMG PROPERTY MANAGEMENT, WEI ZHU,HUIJIE LYU , ZACHARY WANG and;

h.      Such other relief as the court may deem equitable, necessary, and just.

**Eighth Count**
**(BREACH OF FIDUCIARY DUTYAGAINST DMG PARK, DMG INVESTMENTS, DMG PROPERTY MANAGEMENT, YUANLIU HE, WEI ZHU, ZACHARY WANG, AND JOHN DOES 1-100)**

171.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

172.    Defendants Yuanliu He and Wei Zhu, were board members of One Park Condominium Association and had a fiduciary duty to oversee and govern One Park.

173.    Defendant DMG Property Management was hired as the Property Management Company for One Park Condominium Association and also owed the Plaintiffs, as unit owners, a fiduciary duty to oversee and govern One Park.

174.    As stated above, DMG Park, DMG Investments, Yuanliu He, Wei Zhu, Zachary Wang and John Does 1- 100, breached their fiduciary duties owed to Plaintiffs by:

a.      Failing to timely hold annual unit owner meetings;

b.      Failing to timely hold Association meetings;

c.      Failing to hold required elections in accordance with New Jersey Law

d.      Approving the Unauthorized Garage;

e.    Utilizing Association funds for the benefit of DMG Park, DMG Investments, and DMG Investment Employees;

f.    Failing to properly keep and maintain Association meeting minutes;

g.    Failing to make Association meeting minutes available to unit owners;

h.    Failing to properly keep and maintain Association accounting records;

i.    Failing to make Association accounting records available to unit owners for inspection;

j.    Failing to maintain required insurance;

k.    Failing to maintain, repair, and/or replace the common elements;

l.    Failing to assess and collect funds from DMG Park and/or DMG Investments;

m.    Failing to exercise its powers and discharge its functions for the benefit of One Park unit owners;

n.    Failing to provide a fair and efficient procedure for the resolution of disputes between unit owners and the Association;

o.    Failing to separately maintain Association funds in the Association's name and for the benefit of the Association and unit owners;

p.    Failing to hold DMG Park responsible for common element defects;

q.    Failing to hold DMG Investments and other responsible for misappropriation of Association funds;

r.    Failing to hold DMG Property Management responsible for breaches of its agreement with the Association;

s.    Failing to hold Zachary Wang responsible for breaches of its agreement with the Association;

t.    Failing to enforce Master Deed Violation of DMG Investments, and other unit owners;

u.    Failing to hold Unitronics responsible for breaches of its agreement with the  Association, including defective work with respect to the parking garage.

v.    Failing to hold proper elections in 2021, 2022, 2023, and 2024 in accordance with New Jersey State Law.

175.    DMG Park, DMG Investments, Yuanliu He, Wei Zhu, Zachary Wang, and John Does 1- 100 actions and omissions were intended to harm the Plaintiffs.

176.    DMG Park, DMG Investments, Yuanliu He, Wei Zhu, Zachary Wang and John Does 1- 100 actions and omissions, are numerous, take place over a substantial amount of time, and amount to wanton and willful disregard of Plaintiffs' rights as owners at One Park.

177.    DMG Park, DMG Investments, Yuanliu He, Wei Zhu, Zachary Wang and John Does 1- 100 actions and omissions were intentional and taken or not taken to enrich the Association, Board Member Defendants', and their agents, to the Plaintiffs' detriment and harm.

178.    As a result of the foregoing actions and omissions set forth in this Count, along with the Association's failure and/or refusal to act on behalf of the unit owners, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs demand judgment, jointly and severally, against Defendants, DMG PARK, DMG INVESTMENTS, DMG PROPERTY MANAGEMENT, YUANLIU HE, WEI ZHU, ZACHARY WANG and John Does 1-100, for:

a.    Damages, including but not limited to compensatory, incidental, and consequential damages;

b.    Prejudgment and post judgment interest;

c.    Reasonable costs of suit;

d.    Attorneys' fees;

e.    Punitive damages;

f.    An accounting of all funds received and paid out by One Park Condominium Association for the time period covering 2018-2024;

g.    An accounting of all funds paid to Yuanliu He, DMG PARK, DMG INVESTMENTS, DMG PROPERTY MANAGEMENT, WEI ZHU, ZACHARY WANG and.

h.    Such other relief as the court may deem equitable, necessary, and just.

### Ninth Count
### VIOLATION OF 18 U.S.C. § 1343 Wire Fraud – AGAINST DMG PARK, DMG INVESTMENTS, DMG PROPERTY MANAGEMENT, MCGOWAN, ARCHITECTURA, P.C. RICHARD)

179.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

180.    This count is brought against defendants DMG Park, DMG Investments, McGowan Builders, Architectura, and P.C. Richard for selling Plaintiffs used appliances as new.

181.    The defendants used electronic communications, (telecommunications and the internet), to intentionally and knowingly deceive and defraud Plaintiffs of money, property, or honest services by selling Plaintiffs known used products as new.

182.    This count is brought against defendants DMG Park, DMG Investments, DMG Property Management for misappropriating Plaintiffs' HOA fees into a bank account controlled by

DMG Park, DMG Investments, and DMG Property Management.

183. The defendants used electronic communications, (telecommunications and the internet), to intentionally and knowingly deceive and defraud Plaintiffs of money.

184. This count is also brought against defendants DMG Park, DMG Investments, McGowan Builders, and Architectura for their use of electronic communications to intentionally and knowingly deceive and defraud Plaintiffs into buying their condominium units by providing them with false information through electronic communications about the defects present within the property.

**WHEREFORE**, Plaintiffs demand judgment, jointly and severally, against Defendants DMG Park, DMG Investments, McGowan, Architectura, P.C. Richard for:

a. Damages, including but not limited to compensatory, incidental, and consequential damages;

b. Prejudgment and post judgment interest;

c. Reasonable costs of suit;

d. Attorneys' fees;

e. Punitive damages;

f. An accounting of all funds received and paid out by One Park Condominium Association for the time period covering 2018-2024;

g. An accounting of all funds paid to Yuanliu He, DMG Park, DMG Investments, McGowan, P.C. Richard, and Architectura and;

h. Such other relief as the court may deem equitable, necessary, and just.

## Tenth Count
### VIOLATION OF 18 U.S.C. § 1341 Mail Fraud – AGAINST DMG PARK, DMG INVESTMENTS, DMG PROPERTY MANAGEMENT, MCGOWAN, ARCHITECTURA,

**CHIESA, SHAHINIAN, AND GIANTOMASI, AND P.C. RICHARD)**

185.   Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

186.   This count is brought against defendants DMG Park, DMG Investments, DMG Property Management, McGowan Builders, Architectura, Chiesa, Shahinian, and Giantomasi and P.C. Richard for selling Plaintiffs used appliances as new. The defendants used an interstate carrier, to intentionally deceive and defraud Plaintiffs of money, property, or honest services by selling Plaintiff's used products as new.

187.   Plaintiffs have the shipping invoices for the interstate carrier that transported the refurbished products that were sold as new.

188.   This count is also brought against defendants DMG Park, DMG Investments, McGowan Builders, and Architectura for their use of an interstate carrier to intentionally deceive and defraud Plaintiffs into buying their units by providing them with false information about the defects present within the property.

189.   To devise a scheme and artifice to defraud and to obtain money and property from Plaintiffs and other victims by means of materially false and fraudulent pretenses, representations, and promises that affected a financial institution; and for the purpose of executing such scheme and artifice, each Defendant or their coconspirators did knowingly place or cause to be placed in a post office and an authorized depository for mail a matter a thing to be sent and delivered by the U.S. Postal Service or any private or commercial interstate carrier, in violation of Title 18, United States Code, § 1341.

190.   This count is brought against defendants DMG Park, DMG Investments, DMG Property Management for misappropriating Plaintiffs' HOA fees into a bank account controlled by DMG Park, DMG Investments, and DMG Property Management.

191.    The defendants used interstate carrier, to intentionally and knowingly deceive and defraud Plaintiffs of money by mailing Plaintiffs and other fraudulent payment requests via interstate carrier and US Mail that Defendants DMG Park, DMG Investments, and DMG Property Management knew were fraudulent.

**WHEREFORE**, Plaintiffs demand judgment, jointly and severally, against Defendants DMG Park, DMG Investments, DMG Property Management, McGowan, Architectura, P.C. Richard for:

a.    Damages, including but not limited to compensatory, incidental, and consequential damages;

b.    Prejudgment and post judgment interest;

c.    Reasonable costs of suit;

d.    Attorneys' fees;

e.    Punitive damages;

f.    An accounting of all funds received and paid out by One Park Condominium Association for the time period covering 2018-2024;

g.    An accounting of all funds paid to Yuanliu He, DMG Park, DMG Investments, DMG Property Management, McGowan Builders, Architectura, Chiesa, Shahinian, and Giantomasi, and P.C. Richard; and

h.    Such other relief as the court may deem equitable, necessary, and just.

## <u>Eleventh Count</u>
### (VIOLATION OF 15 U.S.C. § 1692(FDCPA) AGAINST DMG PARK, DMG INVESTMENTS, DMG PROPERTY MANAGEMENT, YUANLIU HE, WEI ZHU, ZACHARY WANG)

192.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

193.    The Fair Debt Collection Practices Act prohibits debt collectors from using unfair,

deceptive, or abusive practices to collect debt.

194.    Defendants DMG Park, DMG Investments, DMG Property Management, Yuanliu He, Wei Zhu, and John Does 1-100 were debt collectors for One Park Condominium Association.

195.    From November 2018 – August 2024 Defendants DMG Park, DMG Investments, DMG Property Management, Yuanliu He, Wei Zhu, and John Does 1-100 provided Plaintiffs and other victims with false and misleading information about the amounts owed by Plaintiffs and other victims. Provided false and misleading information to Plaintiffs and other victims fees associated with alleged debts, false characterization of the character, amount, legal status of debt, threatened to take action that legally be taken and that was not intended to be taken, used business, company, or organization names other than the true name of the debt collector's business, and failed to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

**WHEREFORE,** Plaintiffs demand judgment, jointly and severally, against Defendants DMG Park, DMG Investments, DMG Property Management, Yuanliu He, Wei Zhu, and John Does 1-100 for:

a.    Damages, including but not limited to compensatory, incidental, and consequential damages;

b.    Punitive damages;

c.    Prejudgment and post judgment interest;

63

d.    Reasonable costs of suit; and

e.    Attorneys' fees.

**Twelfth Count**

**(SHAREHOLDER DERIVATIVE ACTION FOR MISAPPROPRIATION OF FUNDS AGAINST WEI ZHU, ZACHARY WANG, AND JOHN DOES 1-100)**

196.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

197.    As discussed above, the Board, completely controlled by DMG Park and DMG Investments, would not have been responsive to Plaintiffs' demand for legal action against the DMG Investments Employee Defendants. Hence, Plaintiffs made no additional demand on the Association nor one for the initiation of legal action because such a demand would be futile.

198.    At all relevant times, Wei Zhu and Zachary Wang were totally beholden to the interests of DMG Investments, and acted solely in the interests of DMG Investments, to the detriment of the Association's interests.

199.    Wei Zhu and Zachary Wang cared for the Association's funds by virtue of their status as board members and Zachary Wang as a subcontractor for DMG Property Management. They also had the authority to make hiring decisions for other employees, contractors, or vendors by virtue of their employment.

200.    Wei Zhu , Zachary Wang, and others used their positions convert the Association's funds for their person benefits or the benefits of themselves and DMG Investment.

201.    The Defendants' actions deprived the Association of using the funds for the benefits of Plaintiffs, One Park, and its other unit holders.

202.    The Board has failed to bring any action against Wei Zhu and Zachary Wang for their misappropriation of the Association's funds.

203.    As a direct result of the foregoing, the Association has been damaged.

**WHEREFORE**, Plaintiffs demand judgment, jointly and severally, against Defendants, Wei Zhu, and Zachary Wang for:

    a.    Damages, including but not limited to compensatory, incidental, and consequential damages;

    b.    Prejudgment and post judgment interest;

    c.    Reasonable costs of suit;

    d.    Attorneys' fees; and

    e.    Such other relief as the court may deem equitable, necessary, and just.

### Thirteenth Count
### (SHAREHOLDER DERIVATIVE ACTION FOR BREACH OF CONTRACT AGAINST DMG PROPERTY MANAGEMENT AND JOHN DOES 1-100)

265.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

266.    The Association entered into a valid and binding contract with DMG Property Management which specifically states that DMG Property Management would hire employees in the name of the association, manage the associations, funds, and maintain One Park in a manner acceptable to the Association, and "see that all unit owners are informed with respect to such rules, regulations, and notices as may be promulgated by the Association from time to time."

267.    As set forth above, DMG Property Management has breached its contract with the Association.

268.    DMG Property Management has failed to hire a single employee in the name of the Association.

269. DMG Property Management does not have a single employee

270. DMG Property Management purchased insurance policies with itself as a named insured to provide payment for DMG Park and DMG Investments legal costs.

271. Plaintiffs have notified the Association of its repeated failings to properly manage and oversee One Park, and have demanded the Association act with respect to DMG Property Management's breaches.

272. These demands were met with inaction from the Association due to the Association's conflicts of interest.

273. Any additional demand on the Association would be futile due to the Association's conflicts.

274. As a result, Plaintiffs have been forced to bring this action against DMG Property Management derivatively on behalf of the Association.

275. The Association has been damaged.

**WHEREFORE**, Plaintiffs demand judgment against Defendant, DMG Property Management LLC, for:

  a. Damages, including but not limited to compensatory, incidental, and consequential damages;

  b. Prejudgment and post judgment interest;

  c. Reasonable costs of suit;

  d. Attorneys' fees; and

  e. Such other relief as the court may deem equitable, necessary, and just.

## Fourteenth Count
**(Violation of New Jersey Planned Real Estate Development and Full Disclosure Act, N.J.S.A. §**

**45:22A-21 against DMG Park and DMG Investments, McGowan Builders, Architectura, P.C. Richard,  Chiesa Shahinian & Giantomasi PC, and John Does 1-100)**

276.    Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

277.    Defendants DMG Park, DMG Investments, McGowan Builders, Architectura, P.C. Richard, Chiesa Shahinian & Giantomasi, and John Does 1-100's advertising and related marketing materials and Offering Statement are subjected to the New Jersey Planned Real Estate Development and Full Disclosure Act ("PREDFDA").

278.    In January 2024, Plaintiffs learned that Defendants DMG Park, DMG Investments, McGowan Builders, Architectura, P.C. Richard, Chiesa Shahinian & Giantomasi, and John Does 1-100 knew that information provided in the Public Offering Statement was false, misleading or omitted from the Public Offering Statement including but  not limited to the following:

279.    Upon information and belief square footage of the Plaintiffs' Units is estimated to be 11 to 14 percent smaller than the dimensions as stated on the Offering

280.    Statement and the marketing materials provided by defendants.

281.    Upon information and belief McGowan Builders, P.C. Richard, Architectura, DMG Park, DMG Investments,  and others represented that the appliances in Plaintiffs' units were new in the marketing materials, and Public Offering Statement.

282.    Defendants DMG Park, DMG Investments, McGowan Builders, Chiesa, Shahinian, and Giantomasi, and others  falsely stated the square footage of the Plaintiffs units in their advertising and related marketing materials.

283.    Upon information and belief, the Unitronics Parking garage has specific dimension and vehicle limitations that were known to the Defendants DMG Park, DMG Investments, McGowan Builders, and Chiesa, Shahinian, and Giantomasi.

284.    Upon information and belief, the building was supposed to have a squash court.

285.    Upon information and belief, the building was supposed to have an intercom system.

286.    Upon information and belief, the building was supposed to have staff that were hired in the name of the HOA.

287.    Upon information and belief, the building was supposed to have a functional irrigation system.

288.    Defendants DMG Park, DMG Investments, McGowan Builders, Chiesa, Shahinian, and Giantomasi failed to provide this information to Plaintiffs in their advertising and related marketing materials and the Offering Statement.

289.    The failure of the Defendants to remedy various construction defects within a reasonable time after being notified of them by the Plaintiffs is contrary to the DMG Park, DMG Investments, and Chiesa Shahinian & Giantomasi express promise and representation in the Public Offering Statement that DMG would correct all defects in construction materials or workmanship discovered within two years from the date of completion, within a reasonable time after notification of the defect, and otherwise.

290.    As a direct, proximate and foreseeable result of said violations, the Plaintiffs and other unit owners at One Park have incurred or sustained damage and will in the future incur additional damages.

**WHEREFORE**, Plaintiffs demand judgment, jointly and severally, against Defendants, DMG Park LLC and DMG Investments LLC, McGowan Builders, Architectura, P.C. Richard and Chiesa Shahinian & Giantomasi for:

a.    Double damages under PREDFDA.

b.    Damages, including but not limited to compensatory, incidental, and

consequential damages;

     c.      Prejudgment and post judgment interest;

     d.      Reasonable costs of suit;

     e.      Attorneys' fees; and

     f.      Such other relief as the court may deem equitable, necessary, and just.

### Fifteenth Count
### (BREACH OF IMPLIED WARRANTIES OF INTENDED USE, HABIITABIILITY AND WORKMANSHIP AGAINST MCGOWAN BUILDERS, D&B SERVICE GROUP, ARCHITECTURAL MANUFACTURING WINDOWS, AND JOHN DOES 1-100)

291.      Plaintiffs repeat and re-allege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

292.      Upon information and belief, Mc Gowan Builders was contracted by DMG Park to act as the general contractor and construction manager of the construction of One Park.

293.      McGowan Builders was responsible for supervision of the construction of development, hiring and supervising the work of subcontractors, filing the requisite permits with the borough, conducting inspections of the work of subcontractors, and ensuring that construction was completed to plan.

294.      D&B Service group was hired by McGowan Builders to commission the HVAC systems at One Park Condominium as an HVAC subcontractor for the project.

295.      Architectural Manufacturing was the supplier of windows for the project at One Park.

296.      Upon information and belief, the Subcontractors performed construction work at the Condominium and in Plaintiffs' units specifically, and Architectural Manufacturing Windows supplied Windows.

297.      Plaintiffs have experienced defects in their Units and the common areas which

include, but are not limited to:

    a.    Defects and deficiencies in the installation, construction, and/or design of the HVAC systems in the Units;

    b.    Defects and deficiencies in the installation, construction, and/or design of the and plumbing systems in the Units;

    c.    Defects and deficiencies in the installation, construction, and/or design of the flooring in the Units;

    d.    Failing to install custom-made kitchen cabinetry of the kind and quality promised;

    e.    Defects and deficiencies in the installation, construction, and/or design of the balcony doors and window locks;

    f.    Defects and deficiencies in the installation, construction, and/or design of the balconies;

    g.    Defects and deficiencies in the installation, construction, and/or design of the windows;

    h.    Defects and deficiencies in the installation, construction, and/or design of the electrical systems;

    i.    Defects and deficiencies in the installation, construction, and/or design of the kitchen ranges;

    j.    Defects and deficiencies in the installation, construction, and/or design of the venting for clothes drying machines;

    k.    Defects and deficiencies in the installation, construction, and/or design of the common areas;

l.     Defects and deficiencies in the installation, construction, and/or design of the pool and aquatic area;

m.    Defects and deficiencies in the installation, construction, and/or design of the parking garage;

n.     Defects and deficiencies in the installation, construction, and/or design of the elevators; and

o.     Defects and deficiencies in the installation, construction, and/or design of the lobbies.

298.    As a result of the defects and deficiencies in the installation, construction, and/or design, as well as other issues set forth herein the Plaintiffs have suffered property damage and necessary repairs to their units, and to the common areas.

299.    Given the numerous extensive design and construction related defects found in Plaintiffs' units and the common areas and by failing to remedy, replace, rectify or otherwise cure said construction defects, Mc Gowan Builders, D&B Service Group, Architectural Manufacturing Windows, P.C. Richard, and John Does 1-100 breached their implied warranties of intended use, reasonable workmanship and habitability with respect to the construction of the individual units of Plaintiffs as well as the common areas. Several of the defects were hidden by components and finishes and not readily discoverable upon substantial completion or upon change of control over the common areas.

## **DEMAND FOR JURY TRIAL JURY DEMAND**

Plaintiffs demand a trial by jury of all issues triable by a jury.

Dated:  January 22, 2025

Respectfully submitted,

THE TODD LAW GROUP, PLLC

/s/ Jeffrey Todd

_____

By: Jeffrey Todd
12929 Gulf Fwy Suite 301
Houston, Texas 77034
Tel: (832) 243-4953
Attorney for Plaintiffs